Stutzman Estate.

Argued March 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Thomas Hoffman*, with him *M. J. Hindes*, for appellant.

*Leonard Sobol*, with him *Harry Doerr* and *Harold Kaminsky*, for appellee.

Opinion by Mr. Justice Allen M. Stearne, May 24, 1948:

Unravelling this tangled skein of fact, law and procedure, the single question presented is whether an orphans' court properly removed an administrator *de bonis non cum testamento annexo*?

The administrator d. b. n. c. t. a. was a nonresident and claimed to be a creditor of an insolvent decedent. It was represented that his appointment was made in order to prosecute a claim on behalf of the insolvent estate against a debtor. Upon his appointment he instituted a suit in the United States District Court, which is pending. No issue has been framed, no trial had, nor any decision rendered. The record discloses that a Pennsylvania Court of Common Pleas had previously determined that the claim sued upon was invalid. This decision was affirmed by the Pennsylvania Supreme Court. With the record in this form, a son beneficiary and coexecutor of the insolvent decedent, presented his petition to the orphans' court, reciting the facts, and secured a citation upon the fiduciary to show cause why he should not be removed and his letters vacated. No answer was filed, whereupon the court decreed his removal.

The basic facts are recited at length in the opinions of this Court in *United States Savings and Trust Company, to use, v. Helsel*, reported in 325 Pa. 1, 188 A. 167, 332 Pa. 433, 2 A. 2d 823 and 344 Pa. 386, 25 A. 2d 714.

J. W. Helsel and Dr. Fichtner were the principal stockholders and officers of the Art Stone Block Company. The corporation was indebted to various banks. The obligations were in the form of judgment notes. All were endorsed by both Helsel and Fichtner. Among the notes were two given to The United States Savings and Trust Company of Conemaugh. One was for $5,000 and the other for $1,600. To secure payment of these two notes, *as well as other indebtedness to the bank*, Dr. Fichtner pledged as collateral security a $10,000 policy of insurance upon his life. Dr. Fichtner died.

His wife was a beneficiary under the policy and was also executrix under his will. The widow, as individual and executrix, agreed to pay the two notes aggregating $6,600; she also agreed to release the co-endorser Helsel from all liability to her individually and to Dr. Fichtner's estate, *provided Helsel procured the release of liability of Dr. Fichtner's estate from all claims upon the remaining $14,524.90 of the notes of the Art Stone Block Company upon which Dr. Fichtner and Helsel were co-endorsers.* The consideration was $3,400, the difference between the face of the insurance policy of $10,000 and the amount of the two notes of $6,600. This sum was paid to the bank. The two notes—for $5,000 and $1,600, respectively—when so paid, were assigned by the bank without recourse to Mrs. Fichtner, individually, in order that she might hold them as a claim against the Art Stone Block Company.

In order to effect the release of the Fichtner endorsements, J. W. Helsel reorganized the Art Stone Block Company. Its assets were transferred to, and its liabilities assumed by, a new corporation known as Johnstown Cinder Block Company. In the new corporation, J. W. Helsel associated with himself and others Jacob A. Stutzman. Stutzman *purchased* the entire interest of the Fichtner estate and of Mrs. Fichtner, individually, in the corporate assets. *Included in the purchase price were the Fichtner claims against the company by reason* of the payment of the two notes out of the insurance fund: See 332 Pa. 433, 436, 2 A. 2d 823.

For reasons not appearing in the record, the two notes above referred to were never surrendered by Mrs. Fichtner. She held them, without demand for payment, for eight years. Mrs. Fichtner subsequently assigned the note for $5,000 to the use of Martin J. Hindes, who was her attorney. The use-plaintiff entered judgment on the note against Helsel and issued execution. The court below opened the judgment, which this Court affirmed in 325 Pa. 1, 188 A. 167. After a trial on the merits, the

jury rendered a verdict for Helsel, the defendant, which the court below sustained. This Court affirmed in 332 Pa. 433, 2 A. 2d 823. *By this decision it was finally determined that the sale of the Fichtner claims included the two notes in question and that Helsel was not liable on the notes.*

An extraordinary situation thereafter developed. Jacob A. Stutzman died February 26, 1939, insolvent. His will was probated but letters testamentary were not issued to the executrix. On July 9, 1940, Mrs. Fichtner, a creditor (because of an obligation of decedent to her as part of the purchase price), secured the appointment of her nominee, George Bondy, as administrator c. t. a. of the estate of Jacob A. Stutzman, deceased. *The administrator c. t. a. then sued J. W. Helsel on the same two notes which had already been litigated, whereupon this Court decided that Helsel was not liable.* Despite the fact that in the prior suits it was disclosed that Mrs. Fichtner had assigned the notes to her *attorney*, Martin J. Hindes, the statement of claim averred that said notes were assigned to the insolvent decedent *"without endorsement, for value received".* Soon after the suit was commenced the local counsel for plaintiff sought to withdraw as counsel on the ground that the action was "without merit". The administrator c. t. a. petitioned the court of common pleas to resign. Permission was granted but was later rescinded; judgment was then entered in favor of defendant on demurrer. Plaintiff appealed to this Court. Counsel for the administrator c. t. a. moved this Court to dismiss the appeal because it was taken without the consent of the attorney or of his client. This Court refused the motion. On petition to the orphans' court, Bondy was removed as administrator c. t. a. and William Adler was appointed administrator d. b. n. c. t. a. in Bondy's place and stead. Adler proceeded with the litigation in the Supreme Court. On April 13, 1942, in a Per Curiam opinion, the judg-

ment of the court below in favor of the defendant was reversed with a procedendo. *The basis for our decision was that title to the notes and the matter of res judicata were matters of defense and not questions of law apparent on the face of the statement of claim.*

On September 21, 1942, Adler, the administrator d. b. n. c. t. a., plaintiff in the proceeding reported in 344 Pa. 386, 25 A. 2d 714, appeared in the court of common pleas and suffered a voluntary nonsuit. On December. 16, 1946, Adler, the administrator d. b. n. c. t. a., petitioned for, and secured, his discharge.

On December 18, 1946, the register of wills issued letters of administration d. b. n. c. t. a. to Stephen Sontich, of Ohio, an alleged creditor, who appointed Clarence E. Davis as his attorney-in-fact for the purpose of accepting service of process. Following the appointment of Sontich as administrator d. b. n. c. t. a., on December 23, 1946, he sued J. W. Helsel in the United States District Court. Jurisdiction was presumptively on the ground of diversity of citizenship. This suit is still pending.

On February 10, 1947, on application of defendant, and with notice, a rule was granted on plaintiff, which was thereafter made absolute, to rescind the voluntary nonsuit and with right to plaintiff to proceed with the case. On June 16, 1947, the case was called for trial. Neither plaintiff nor his counsel appeared. A compulsory nonsuit was entered against plaintiff. No application was made to remove the nonsuit and no appeal has been taken from that judgment.

The co-executor and son of the insolvent decedent then presented a petition to the orphans' court, in which is recited all of the above facts, praying for a citation upon the administrator d. b. n. c. t. a. to show cause why he should not be removed. No answer was filed. The citation was made absolute and the fiduciary removed. This appeal followed.

The error assigned is the entry of the decree revoking the appointment of the administrator d. b. n. c. t. a.

It is maintained that petitioner, the co-executor and a beneficiary under the will of the insolvent decedent, has no interest because (1) letters were not issued to petitioner and (2) only creditors are interested. But if litigation instituted on behalf of the estate proves unsuccessful, liability for costs may accrue against the estate. While the estate may be presently insolvent, yet if assets should subsequently be paid into the estate, the estate could become solvent and the petitioner would be directly affected. While this result may be remote, yet we feel the petitioner has sufficient interest to bring the present situation to the attention of the orphans' court for such action as it deems appropriate.

We are unimpressed by appellant's statement in explanation or excuse for his failure to file an answer to the petition for removal. None of the reasons which he now presents appear *in the record*. If appellant's attorney-in-fact, or his local counsel, failed in his duty concerning the proper filing of an answer, this would clearly be a matter resting exclusively between them. But such answer, even had it been filed, would not have altered the legal result. The court of common pleas and this Court have decided that the claim is an invalid one. An answer, even if filed in time, would not have prevented the removal of a fiduciary who persists in pressing an invalid claim.

Appellant, in his paper book, asserts that he was unaware that his removal was due to his default in filing an answer until he received a copy of the court's opinion on December 24, 1947. He further says that on that date *this appeal was pending*, and that in order to move to open the order the appeal would have had to be discontinued and hence would have foreclosed a future appeal because of lapse of time. An examination of the record disproves such assertion. The decree of removal was signed September 29, 1947 and is attached to the "motion to make rule absolute". In the motion it clearly

appears that the reason for entering the decree was *because of appellant's failure to file an answer*. It is to be observed that an exception is noted to appellant. An opinion of the President Judge of the Orphans' Court was thereafter filed, dated December 14, 1947. The certiorari from this Court was dated December 30, 1947. There is no merit in the contention that a default judgment was inequitably secured.

Appellant's principal objection is that his removal as fiduciary by the *Pennsylvania Orphans' Court* has the effect of "leaving the suit without a plaintiff" in the United States District Court. The answer to this contention is plain. While the Federal court may possess jurisdiction over the subject matter because of the diversity of citizenship, the claim sued upon is a written document executed in the State of Pennsylvania between residents of this State, to be performed in this State. In such circumstances the Federal courts *will apply Pennsylvania law: Erie Railroad Co. v. Tompkins*, 304 U. S. 64; *Magnolia Petroleum Co. v. Hunt*, 320 U. S. 430, 435; *Huddleston et al. v. Dwyer et al.*, 322 U. S. 232; *DeCastro v. Board of Commissioners of San Juan*, 322 U. S. 451; *Guaranty Trust Co. v. York*, 326 U. S. 99; *Williams et al. v. Green Bay & Western Railroad Co.*, 326 U. S. 549; *Vanston Bondholders Protective Committee v. Green et al.*, 329 U. S. 156; *Gulf Oil Corp. v. Gilbert*, 330 U. S. 501; *United States v. Standard Oil Co. of California et al.*, 67 Supreme Court Reporter 1604. The Supreme Court of this Commonwealth, in the various cases herein cited, has declared the Pennsylvania law and its application to this defendant and the notes here sued upon.

The decree or order of the court below is affirmed, at appellant's cost.