## Lustig, Appellant, *v.* Facciolo.

108

Argued January 14, 1963. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Melvin E. Caine,* with him *Angelo A. DiPasqua,* and *Caine & DiPasqua,* for appellants.

*Guy G. deFuria,* with him *John R. Graham,* and *deFuria, Larkin and deFuria,* and *Crawford, Graham and Johnson,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 19, 1963:

The plaintiffs (eleven in number) purchased, prior to February, 1953, houses from the defendants who owned a plot of land known as the Rose Tree Woods in Marple Township, Delaware County. The plaintiffs' houses are located on Boxwood Drive, one street to the rear of Sproul Road, on which, at one time, the defendants intended to build dwellings.

In June, 1959, Marple Township, at the request of the defendants, rezoned the lots fronting on Sproul Road to "B" business, thus permitting the defendants to devote these lots to commercial and business uses. The plaintiffs filed a complaint in equity asking the court to impose an implied negative covenant upon the Sproul Road properties, limiting their use to residential purposes alone. The court dismissed the complaint and the plaintiffs appealed.

It is the contention of the plaintiffs that the defendants, through their salesmen, assured them that the Sproul Road lots would be sold only for homes, but whatever assurances were orally made in this respect were blotted out by the provision in the agreements of sale, namely, "No dealing between the parties or custom shall be permitted to contradict, vary, add to or modify the terms hereof." No writing passing to the plaintiffs from the defendants contained the restriction argued for by the plaintiffs.

The plaintiffs advance another reason for assuming that the defendants guaranteed to them that Sproul Road would be graced only with residences and not degraded with commercial establishments. The map in the sample house, located at Sproul Road and Paxon Hollow Road, showed, the plaintiffs maintain, that it was to be dedicated to residences. This conclusion is predicated upon the fact that some of the lots on Sproul Road on the map, which were intended to be residences, were marked by thumb tacks, and it was the custom of the trade, the plaintiffs assert, that such marking indicated the lots had been sold. It developed that the lots had not been sold and the plaintiffs submit this discrepancy as proof of fraud on the part of the defendants.

The argument is neither persuasive nor convincing. The use of thumb tacks would be a rather loose way to fasten liability on anybody, absent any express understanding to be so bound. Thumb tacks are so common an object, so widespread in use, so undenotative of purpose, except to hold flimsy substances together, that they cannot, per se, authoritatively bespeak legal obligation. For the plaintiffs to prevail with this reasoning, they needed to show, which they did not show, that the use of thumb tacks in the manner indicated constituted a recognized meaningful custom. In *Makransky v. Weston*, 304 Pa. 383, 387, Justice

(later Chief Justice) MAXEY said: "A custom in order to be considered in construing a contract must be shown to have been known to both parties to a contract, or so well established, general and uniform that the parties are presumed to act and contract with reference to it." Where the parties do not agree upon a custom or usage, it is not binding on them unless it is so " 'notorious, uniform and well established that a knowledge of them will be presumed.' " (*Makransky*, p. 387, supra).

It is clear that the plaintiffs cannot legally hold the defendants by thumb tacks to what appeared on the map or what was said by their salesmen.

The plaintiffs here are asking for what is not favored in the law, a restrictive covenant restraining a landowner in the free enjoyment of his property. (*Baederwood v. Moyer*, 370 Pa. 35.) The very idea of property bespeaks dominion, control and exclusive private enjoyment. A landowner loses much when he is compelled to limit that private enjoyment. He may, of course, be restrained by law and by agreement, but when the agreement rests on mere implication, the circumstances supporting that implication must have bedrock foundations of evidentiary reliability. Those circumstances are absent here.

The record well establishes that the court below properly concluded that a negative restrictive covenant could not be imposed upon the lots fronting Sproul Road, and that no fraud was practiced upon the plaintiffs with regard to the future use to which those lots would be dedicated.

We find no abuse of discretion by the chancellor which would warrant any reversal or modification of his findings of fact and conclusions of law, and the decree of the court below is therefore affirmed, each party to bear own costs.